# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**JASON HEPWORTH DUNCAN and TIFFANIE ANN DUNCAN,**<br><br>Debtors. | **Bankruptcy Case No. 16-40205-JMM** |
| **GARY L. RAINSDON,**<br><br>Plaintiff,<br><br>v.<br><br>**DUNCAN LIMITED PARTNERSHIP,**<br><br>Defendant. | **Adv. Proceeding No. 20-8056-JMM** |
| **DUNCAN LIMITED PARTNERSHIP,**<br><br>Counterclaimant,<br><br>v.<br><br>**GARY L. RAINSDON,**<br><br>Counterdefendant. | |

## MEMORANDUM OF DECISION

MEMORANDUM OF DECISION–1

**Appearances:**

R. Kade Beorchia, WORST AND ASSOCIATES, P.C., Twin Falls, Idaho, Attorney for Plaintiff/Counterdefendant.

Randall A. Peterman, GIVENS PURSLEY LLP, Boise, Idaho, Attorney for Defendant/Counterclaimant.

*Introduction*

Before the Court in this adversary proceeding is a motion for partial summary judgment[1] ("Motion") filed by the plaintiff/counterdefendant, Gary L. Rainsdon ("Trustee").  Doc. No. 106.  A second motion, seeking a protective order, was filed by defendant/counterclaimant, Duncan Limited Partnership ("Partnership").  Doc. No. 98.  The motion for protective order is not at issue today but will be set for hearing at the same time as a status conference following resolution of the Motion.

The Court heard oral argument on January 9, 2023, and thereafter took the Motion under advisement.  Having now considered the record, briefs, and arguments of the parties, as well as the applicable law, the Court issues this decision which resolves the Motion.  Fed. R. Bankr. P. 7052; 9014.[2]

---

[1] Although styled as a motion for summary judgment, Trustee only seeks summary judgment on a few of the counts and issues presented in the adversary proceeding.  As such, the Motion is, technically, one for partial summary judgment.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION–2

*Undisputed Facts*

Debtors Jason Hepworth Duncan and Tiffanie Ann Duncan ("Debtors") filed a chapter 7 bankruptcy petition on March 18, 2016.  BK Doc. No. 1.[3]  Trustee was appointed to administer the case.

In 1985, Partnership was created and registered under Idaho law.  Beorchia Aff., Doc. No. 106-1 at Ex. A; Partnership's Stmt. of Undisputed Facts, Doc. No. 116 at p. 10.  Debtor Jason Hepworth Duncan ("Duncan") held a limited partnership interest in Partnership at the time of the bankruptcy filing.  Beorchia Aff., Doc. No. 106-1 at Ex. B, Duncan Aff., Doc. No. 71 at ¶ 3.  All documents in the record indicate Duncan's interest in Partnership was 10.446%.  *See* Peterman Dec., Doc. No. 117 at Ex. A.  That interest became property of Debtors' bankruptcy estate under § 541(a).  Response to Trustee's Statement of Facts, Doc. No. 116 at p. 13.  On March 15, 2004, a Partnership Agreement was executed ("Agreement.")  Doc. 106-1.  The Agreement was in effect at the time the bankruptcy petition was filed.  Trustee did not assume the Agreement pursuant to § 365, and because Debtors filed a petition under chapter 7, if the Agreement is executory, by operation of law it would have been rejected 60 days after the bankruptcy filing pursuant to § 365(d)(1).

Per the Agreement, "upon the written request of a Partner or an Assignee," the General Partners will make a distribution to the requesting partner or assignee of an amount "equal to the amount of federal and state income taxes incurred by that partner or

---

[3] To distinguish between dockets, the Court will refer to the docket in the main bankruptcy case as "BK Doc. No." and the docket in this adversary proceeding as "Doc. No."

MEMORANDUM OF DECISION–3

Assignee on account of the allocation to the Partner or Assignee, directly or indirectly, of profits, losses, income, or gain." Agreement, Doc. No. 106-1 at ¶ 15. Following the bankruptcy filing, a distribution was made in 2018 on Duncan's behalf for the 2017 tax year in the amount of $46,153. Dec. of Paul Duncan, Doc. No. 71 at ¶ 6 & Ex. C. The check was made out to "Gary Rainsdon Trustee." *Id.* at Ex. C. In similar fashion, a distribution in the amount of $30,257 was made to Trustee on behalf of Duncan for tax year 2018. *Id.* at ¶ 10 & Ex. D. Beginning with tax year 2019, however, despite Trustee's requests, Partnership did not make any further distributions on behalf of Duncan, and Trustee commenced this adversary proceeding on September 10, 2020. The adversary complaint was amended twice,[4] and the third amended complaint was filed on August 17, 2021, to which Partnership filed an answer and counterclaim after which Trustee filed an answer to the counterclaim. Doc. Nos. 58; 90 & 91. It is based on this third amended complaint that the Court will consider the Motion.

### *Standard on Summary Judgment*

The standards guiding the Court in considering a motion for summary judgment are well-settled. Summary judgment is properly granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-

---

[4] The original complaint was filed on September 10, 2020, to which Partnership filed a motion to dismiss several counts. Doc. Nos. 1 & 5. The motion was fully briefed, after which Trustee filed an amended complaint. Doc. Nos. 10–11 & 13. The motion to dismiss was thereafter granted in part and denied in part, after which Trustee filed a second amended complaint. Doc. Nos. 26 & 30. Partnership again responded to the newly filed complaint with a motion to dismiss the first cause of action, to which Trustee objected. The Court ultimately granted in part and denied in part the motion. Doc. Nos. 31, 34 & 36. Partnership thereafter filed an answer and counterclaim, to which Trustee answered. Doc. Nos. 37 & 50. Finally, by agreement between the parties, Trustee was permitted to file his third amended complaint. Doc. Nos. 53, 55 & 58.

MEMORANDUM OF DECISION–4

moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56, incorporated by Rule 7056; *Herrera v. Scott (In re Scott),* 588 B.R. 122, 128 (Bankr. D. Idaho 2018) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

In considering a summary judgment motion, the Court does not weigh the evidence but instead determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). An issue is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods.*, 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The substantive law will identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S. Ct. 2505.

The initial burden of showing there are no genuine issues of material fact rests on the moving party. *Herrera*, 588 B.R. at 128 (citing *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998))). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex,* 477 U.S. at 322–23, 106 S. Ct. 2548).

## *Analysis*

Trustee seeks summary judgment on three issues: 1) whether the Agreement is an executory contract for purposes of § 365; 2) whether Trustee was required to assume the

MEMORANDUM OF DECISION–5

Agreement pursuant to § 365; and 3) whether the Agreement remains valid and enforceable with regard to the bankruptcy estate's interest in the Partnership.[5] Doc. 106 at p. 2. These threshold questions affect the balance of the issues raised in the complaint and counterclaims. Because Trustee has so limited the scope of the Motion, the Court will consider only those issues in this decision.

A.  Executory Contracts Under the Bankruptcy Code

Section 365 governs the treatment of executory contracts in a bankruptcy case. Relevant here, § 365(d)(1) states:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

Although the Bankruptcy Code does not define the characteristics of an executory contract, the standard understanding of the term "executory contract" in the bankruptcy context is the so-called "Countryman definition" that turns on whether the contract requires further performance from each party, the nonperformance of which would be a material breach. *NLRB v. Bildisco & Bildisco,* 465 U. S. 513, 522–23 n.6, 104 S. Ct.

---

[5] The Court notes the scope of Trustee's Motion is somewhat unclear. While the Motion initially seeks summary judgment on Count 2 of Trustee's complaint and Count 4 of Partnership's counterclaim, it also asks for rulings on only three specific issues. The two counts at issue contain additional allegations beyond those included in the specific rulings Trustee seeks. For example, Trustee apparently does not seek summary judgment on the bankruptcy estate's status regarding the Agreement – limited partner, transferee, or other; the Trustee's right to sell the bankruptcy estate's interest in Partnership to a third party; the bankruptcy estate's right to minimum distributions to pay taxes under ¶ 15 of the Agreement; the bankruptcy estate's right to distributions of available funds under ¶ 16 of the Agreement, and whether the Partnership has breached the Agreement by refusing to make distributions under ¶¶ 15 and 16 to the bankruptcy estate, allegations which are found in Count 2 of his complaint. In similar fashion, Count 4 of Partnership's counterclaim contains one additional issue for which Trustee does not apparently seek summary judgment: whether Trustee had no right to obtain funds from the Partnership.

MEMORANDUM OF DECISION–6

1188, 79 L. Ed. 2d 482 (1984); Vern Countryman, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 57 Minn. L. Rev. 439, 446 (1973) ("A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other"); *Unsecured Creditors Comm. Of Robert L. Helms Constr. & Dev. Co. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.)*, 139 F.3d 702, 705 (9th Cir. 1998) (en banc) ("'[A] contract is executory if 'the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'"); 3 *Collier on Bankruptcy,* ¶ 365.02[2] (Richard Levin and Henry J. Sommer, eds. 16th ed. rev. 2022) (an executory contract "generally includes contracts on which performance remains due to some extent on both sides."). The Countryman definition is the law of this circuit. *Helms*, 139 F.3d at 705; *In re JZ L.L.C.*, 371 B.R. 412, 425 (9th Cir. BAP 2007).

In considering whether a contract is executory, the Court looks at the outstanding obligations at the time the petition is filed and asks whether both sides must still perform. *In re Eutsler*, 585 B.R. 231, 237 (9th Cir. BAP 2017). The materiality of the parties' remaining obligations depends on whether, under applicable state law, one party's nonperformance would excuse the other party's obligation to perform. *Id.* (citing *Hall v. Perry (In re Cochise Coll. Park, Inc.),* 703 F.2d 1339, 1348 n.4 (9th Cir. 1983)).

MEMORANDUM OF DECISION–7

B. Is the Agreement an Executory Contract?

Initially, the Court notes that the issue of whether a contract is "executory" is generally a question of fact. *Helms,* 139 F.3d at 706 n.13. It appears, however, that there are no disputed facts and the question relies solely on the legal interpretation of the Agreement. Moreover, no party argues that there are disputed facts preventing the Court from deciding these narrow issues.

While Trustee views the Agreement as not executory, Partnership argues otherwise. It contends first that the right to distributions renders the Agreement executory, and second, that the right of first refusal is an executory provision. The Court will discuss each of these arguments.

*1. The Right to Distributions*

The Court first examines the distribution mechanism in the Agreement, which provides:

> 15. MINIMUM DISTRIBUTIONS TO PAY TAX. To the extent of Available Funds, the Partnership shall, upon the written request of a Partner or an Assignee, distribute to or for the benefit of that Partner or that Assignee during each Fiscal Year or within 90 days of the close of each Fiscal Year an amount equal to the amount of federal and state income taxes incurred by that Partner or Assignee on account of the allocation to the Partner or Assignee, directly or indirectly, of profits, losses, income, or gain. The written request by the Partner or Assignee shall be received by the General Partners within 90 days of the close of the Fiscal Year to which the allocation relates.

Agreement, Doc. No. 106-1 at ¶ 15.

MEMORANDUM OF DECISION–8

Partnership contends that because Trustee requested distributions for the 2016 and 2017 tax years, which distributions were provided, this action demonstrates the executory nature of the Agreement. The Court disagrees.

The right to a distribution is akin to an option within the Agreement. An option contract is "the grant of a right without any obligation." *Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 1094 (D. Idaho 2010) (quoting *Ford v. Lord,* 99 Idaho 580, 583, 586 P.2d 270, 273 (1978)). Under the Agreement, Debtor has the right to seek a distribution in an amount equal to the tax liability created by his interest in the Partnership. While not an option contract per se, this contractual right is similar.

In *Helms,* the Ninth Circuit overruled a prior case which held that all options are executory contracts, holding instead that:

> [W]e look to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform. Performance due only if the optionee chooses at his discretion to exercise the option doesn't count unless he has chosen to exercise it. An option may on occasion be an executory contract, for instance, where the optionee has announced that he is exercising the option, but not yet followed through with the purchase at the option price.
>
> The question thus becomes: At the time of filing, does each party have something it must do to avoid materially breaching the contract? Typically, the answer is no; the optionee commits no breach by doing nothing.

*Helms*, 139 F.3d at 706.

In that case, the Ninth Circuit noted that an option is non-executory if the optionee need not exercise the option, and if he does nothing, the option lapses without breach. Rather, the contingency which triggers potential obligations—exercising the option—is completely within the optionee's control. *Helms*, 139 F.3d at 705–06.

MEMORANDUM OF DECISION–9

The same situation is present under the Agreement. Partners need not exercise their right to seek a distribution, and if they do not do so within the specified time, that right lapses without breach. The contingency which triggers the General Partners' obligation to make the distribution is completely within each limited partner's control.

The Ninth Circuit's Bankruptcy Appellate Panel considered a case in which the debtor's obligation to sell stock and the minority shareholders' obligation to pay for it were, at the time of the bankruptcy filing, contingent on the minority shareholders' future decision to exercise the option. *Eutsler*, 585 B.R. 231. Applying *Helms,* the BAP held those obligations do not count:

> The only obligations which the parties owed to each other at the petition date were the obligation to give notice of the bankruptcy filing and any voluntary or involuntary assignment, and obligations not to compete with or disparage [the company] or encumber the stock. The bankruptcy court held that a breach of these provisions might justify an award of damages or injunctive relief but would not defeat the purpose of the [] Agreement or justify the other party's suspension of performance.

*Id.* at 237 (citations to Texas law omitted). Likewise, the right to request distributions under the Agreement is not mandatory, and if one is not requested, there is no breach. As such, Duncan's option to seek distributions to defray his tax liability under the Agreement do not render it executory.

2. *The Right of First Refusal*

Partnership also cites to other provisions of the Agreement which it believes render the Agreement executory—specifically, the right of first refusal. The Agreement includes a right of first refusal for any partner, regardless of type, who wants to transfer their partnership interest to a non-partner, whether voluntarily or involuntarily. If the

MEMORANDUM OF DECISION–10

intended transfer is voluntary, the Agreement includes a procedure, beginning with written notice to all other partners and a 60-day option to buy the transferring partner's interest. If involuntary, the 60-day option period is automatic. Agreement, Doc. No. 106-1 at ¶ 29.

Partnership cites to several Idaho cases in which a right of first refusal was featured, but the Court concludes those cases do not resolve the issue presented here. For example, the case of *Meridian Bowling Lanes, Inc. v. Meridian Athletic Ass'n, Inc.,* has little bearing on this case, save for the unremarkable proposition that a preemptive right of first refusal is a legitimate contractual right. 105 Idaho 509, 511, 670 P.2d 1294, 1296 (1983). In *Nicholson v. Coeur D'Alene Placer Mining Corp.*, the court's focus was on the legal description of the property allegedly subject to a right of first refusal, and ultimately concluded it was too vague for any such right to be enforceable. 161 Idaho 877, 882–83, 392 P.3d 1218, 1223–24 (2017). Finally, in *Gyurkey v. Babler*, 103 Idaho 663, 666–67, 651 P.2d 928, 931–32 (1982), the court considered whether the entire offer was properly communicated to the holder of the right of first refusal.

The case of *In re CB Holding Corp.*, 448 B.R. 684, 689 (Bankr. D. Del. 2011), also cited by Partnership, involved the right of first refusal to buy valuable liquor licenses. It held that the right of first refusal is executory in nature, a proposition for which the court cited *Steffan v. McMillan (In re Coordinated Financial Planning Corp.)*, 65 B.R. 711, 713 (9th Cir. BAP 1986). *Coordinated Financial* has been impliedly overruled by *Helms,* however, as noted by *In re Bergt*, 241 B.R. 17, 20 (Bankr. D. Alaska 1999).

MEMORANDUM OF DECISION–11

The *Bergt* decision relied on *Helms* and held that a right of first refusal in favor of owners of lots adjoining those to be sold is not executory. *Id.* (the right of first refusal on the lots in question "is not an executory contract and not subject to rejection since it was not being 'exercised' when the bankruptcy petitions were filed.") Under the terms of the Agreement, the right of first refusal was not being exercised when the petition was filed, and thus does not render the contract executory.

In addition to *Helms* and *Bergt*, this Court finds the case of *Samson v. Prokopf (In re Smith)*, 185 B.R. 285 (Bankr. S.D. Ill. 1995) to be instructive. As in the Agreement before this Court, the partnership agreement in *Smith* allowed a limited partner to sell his or her economic interest in the partnership to a third party but only after first offering the interest to the partnership for purchase. *Id.* at 289. The agreement provided that if a sale to a third party occurred, the third party would not become a limited partner unless the general partner gave his consent and certain other requirements were met. *Id.* Following a bankruptcy filing, the issue arose whether the partnership agreement was executory. In ruling on that issue, the court found that the provision "does not create a performance obligation but merely constrains the manner by which a partner may liquidate his or her holdings." *Id.* at 294. The court noted that even if it did create a performance obligation, it was not a material obligation that would excuse performance by the remaining partners, observing:

> Here, the partnership agreement provides that an assignee or transferee of a limited partner's interest in the partnership does not become a substitute limited partner unless, *inter alia*, the general partner consents to the substitution. In other words, upon a sale in violation of the remaining partners' preemptive rights, the purchaser would obtain no more than the

MEMORANDUM OF DECISION–12

> assigning partner's right to share in partnership profits and surplus. He or she would be unable to exercise any of the rights of a limited partner under the agreement.… Existence of the "buy back" provision, therefore, does not transform the limited partnership agreement into an executory contract.…

*Id.* This Court concurs with this logic. In the case at bar, the Agreement provides a right of first refusal for all situations, including where the transfer is by inheritance after the death of any partner and also when it occurs involuntarily. Doc. No. 106-1 at ¶ 29. In addition to the right of first refusal, in all instances where the partnership interest is transferred to anyone other than another partner, the incoming partner cannot be substituted in as a partner "unless all other Partners agree in writing to accept the assignee as a substituted Partner." *Id.* The same is true with involuntary transfers—the right of first refusal applies and additionally, "[i]n no event shall the transferee become a substituted Partner unless all other Partners agree to accept the transferee as a substituted Partner." *Id.* In other words, the right of first refusal constrains the manner by which a partnership interest may be transferred, and under the Agreement, written consent of the other partners is still required to confer "substituted partner" status on the transferee. Thus, as in *Smith*, the existence of the right of first refusal does not transform the Agreement into an executory contract.

C. Other Arguments Advanced by Partnership

Partnership raises several other arguments which the Court will briefly consider. They are: 1) the Agreement is a personal services contract; 2) the Agreement grants limited partners certain rights; and 3) the Uniform Partnership Act imposes a duty of

MEMORANDUM OF DECISION–13

good faith and fair dealing. Finally, the Court will consider whether the defenses of estoppel and waiver prevent Trustee from denying the Agreement is executory.

### 1. *Personal Services Contract*

Partnership contends that the Agreement is a personal services contract, and as such, § 365(c) prevents Trustee from assuming Duncan's partnership interest. Partnership is correct that under Idaho case law, contracts for personal services may not be assumed without the consent of the parties. *In re Sunset Devs.*, 69 B.R. 710, 712–13 (Bankr. D. Idaho 1987) ("A partnership agreement is a contract based on personal trust and confidence, which cannot be assigned or assumed without consent of the parties."). Section 365(c) provides that a trustee may not assume or an assign *any executory contract* if applicable law excuses Partnership from accepting performance from or rendering performance to Trustee. As is clear from the statutory text, however, for § 365(c) to apply, the contract at issue must be executory. *Id.* at 712 ("For 11 U.S.C. § 365(e) to apply the partnership agreement must be an executory contract.")[6]

Accordingly, the Court concludes this argument is inapplicable in light of its holding that the Agreement is not executory.

---

[6] The facts of the *Sunset Dev.* case differ from those presented here in one significant aspect: *Sunset* involved an Idaho general partnership consisting of only two general partners. Here, Duncan is a limited partner in an Idaho limited partnership. As such, his rights and obligations are substantially different from those of a general partner. And Idaho, like other states, has different statutory status, rights, and obligations for limited, as opposed to general, partnerships. *Compare* Idaho Code § 30-23-101 *et seq.*, *with* Idaho Code § 30-24-101 *et seq.* Therefore, *Sunset* is distinguishable from the adversary proceeding before this Court.

MEMORANDUM OF DECISION–14

2. *Rights Granted to Limited Partners*

The Agreement provides certain rights to limited partners, such as Duncan. These include a right to a distribution upon withdrawal from the Partnership, a right to an accounting if the Partnership is dissolved, the right to participate in the dissolution of the Partnership, the right to vote on any proposed amendment to the Agreement that would adversely impact the limited partner, and the right, guaranteed under both the Agreement and the Uniform Partnership Act, of access to the Partnership's books and records. None of these rights, however, are performance obligations that transform the Agreement into an executory contract under the Countryman definition and the existing case law.

3. *Good Faith and Fair Dealing*

In this argument, Partnership highlights the requirement, imposed by the Uniform Limited Partnership Act, that both general and limited partners must discharge any duties under the partnership agreement "consistent with the contractual obligation of good faith and fair dealing." Idaho Code §§ 30-24-305(a), 30-24-409(d). It contends that this duty is separate and apart from the duty of good faith and fair dealing imposed on contracts generally by the Uniform Commercial Code, and as such, this additional duty of good faith somehow "confirms the executory contract nature" of the Agreement. Brief, Doc. No. 115 at ¶ F. The Court cannot fathom, nor was it explained, how a requirement of good faith and fair dealing imposed by statute can singlehandedly transform the Agreement into an executory contract. Indeed, if this were the case, all contracts would be executory. Accordingly, these requirements do not make the Agreement executory.

MEMORANDUM OF DECISION–15

### 4. *Estoppel and Waiver*

Partnership argues that because Trustee utilized provisions of the Agreement to seek distributions to cover Duncan's tax liability, he is now estopped from arguing the Agreement is not executory.

The Court will first examine the defense of estoppel. The elements of equitable estoppel are: (1) a false representation or concealment of a material fact made with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not and could not have discovered the truth; (3) an intent that the misrepresentation or concealment be relied upon; and (4) that the party asserting estoppel relied on the misrepresentation or concealment to his or her prejudice. *Willig v. State, Dep't of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995); *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill,* 103 Idaho 19, 22, 644 P.2d 341, 344 (1982). Partnership has not demonstrated that Trustee falsely represented or concealed a material fact, and thus this defense does not apply. Moreover, Partnership has not demonstrated prejudice. In *Brand S Corp. v. King,* 102 Idaho 731, 734, 639 P.2d 429, 432 (1981), the court explained that to demonstrate prejudice, the parties asserting equitable estoppel must have "changed their position as a result of the alleged representation and suffered a detriment as a result thereof." No such showing has been made or even argued.

Partnership next argues that quasi estoppel is a defense to Trustee's argument that the Agreement is not executory. This assertion is more on point, as quasi estoppel is distinguished from equitable estoppel "in that no concealment or misrepresentation of existing facts on the one side, no ignorance or reliance on the other, is a necessary

MEMORANDUM OF DECISION–16

ingredient." *Willig,* 127 Idaho at 261, 899 P.2d at 971 (quoting *Evans v. Idaho State Tax Comm.,* 97 Idaho 148, 150, 540 P.2d 810, 812 (1975)). The doctrine of quasi estoppel applies when it would be unconscionable to allow a party to assert a right which is inconsistent with a prior position. *Id.* (quoting *Mitchell v. Zilog, Inc.,* 125 Idaho 709, 715, 874 P.2d 520, 526 (1994)). The question of unconscionability, however, is muddied by the fact that Partnership acquiesced for two years in Trustee's requests for distributions to pay Duncan's tax liabilities. This adversary proceeding was only commenced after Trustee again requested a distribution and Partnership, for the first time, refused. In that respect, how can it be unconscionable for Trustee to now argue the Agreement is not executory when the 60-day "assume or reject" period had long passed while the Partnership raised no objection to making those distributions? Thus, the Court does not find that Trustee acted unconscionably and concludes he is not equitably estopped from pursuing the relief sought in this adversary proceeding.

Partnership also contends that judicial estoppel now prevents the Trustee from arguing the Agreement is not executory. Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *In re Parker,* 471 B.R. 570, 576 (9th Cir. BAP 2012) (quoting *Whaley v. Belleque,* 520 F.3d 997, 1002 (9th Cir. 2008)); *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013) (citing *A & J Const. Co. v. Wood,* 141 Idaho 682, 684, 116 P.3d 12, 14 (2005)). The doctrine is an equitable one, invoked in the exercise of discretion by a bankruptcy court. *Parker,* 471 B.R. at 576 (quoting *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001)).

MEMORANDUM OF DECISION–17

Partnership contends that Trustee has treated the Agreement as executory and now claims it is not. The Court disagrees. Had Trustee considered the Agreement to be executory, he would have had to accept or reject the Agreement within 60 days of filing pursuant to § 365. Having not done so, the record contains no clear indication that Trustee considered the Agreement executory, from which position he now alters course. Partnership seeks to have the Court infer that because Trustee exercised the provision giving a limited partner the option to seek a distribution to cover resulting tax liability, then Trustee necessarily took the position that the Agreement was executory. The Court declines to make such an inference. Therefore, there is no showing the Trustee ever changed position. In the exercise of its discretion, the Court concludes the defense of judicial estoppel is not applicable here.

The Court will now examine the defense of waiver. "A waiver is a voluntary, intentional relinquishment of a known right or advantage, and the party asserting the waiver must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment." *Knipe Land Co. v. Robertson*, 151 Idaho 449, 457–58, 259 P.3d 595, 603–04 (2011) (quoting *Fullerton v. Griswold,* 142 Idaho 820, 824, 136 P.3d 291, 295 (2006) (internal quotation omitted)). "Waiver is foremost a question of intent." *Seaport Citizens Bank v. Dippel,* 112 Idaho 736, 739, 735 P.2d 1047, 1050 (Ct. App. 1987). A clear intention to waive must be shown before waiver may be established, and waiver will not be inferred absent a "clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel." *Margaret H. Wayne Trust v. Lipsky,* 123 Idaho 253, 256, 846 P.2d 904, 907 (1993).

MEMORANDUM OF DECISION–18

As noted above, Trustee never treated the Agreement as executory, otherwise he would have formally assumed or rejected it within 60 days. Yet, the 60-day period passed, and Trustee continued to seek yearly distributions to cover Duncan's tax liability. As such, the record contains no evidence of intent to treat the Agreement as executory, nor has there been shown a clear and unequivocal act manifesting such intent. Again, Partnership relies on its belief that the provision giving limited partners the option to seek such distributions must necessarily be executory, and the Court has held otherwise. Accordingly, there has been no waiver.

## *Conclusion*

The Court finds there are no material facts in dispute regarding the narrow issue before it: whether the Agreement is executory. As such, it is ripe for summary judgment. On the date Debtors filed their chapter 7 bankruptcy petition, the Agreement imposed no obligations on Duncan which the failure to perform would constitute a material breach. He had the ongoing option to request a yearly distribution to offset the tax liability created by his interest in the Partnership. Moreover, in the event he wished to transfer his interest in the Partnership, whether voluntarily or involuntarily, the Agreement provided for notice, a right of first refusal, and an obligation for the other partners to consent in writing before any transferee would be treated as a substituted partner. These provisions do not make the Agreement executory, and as such, the failure to assume or reject the Agreement within 60 days does not constitute a rejection as a matter of law under § 365. The Court grants summary judgment in favor of Trustee on

MEMORANDUM OF DECISION–19

the issues of whether the Agreement is an executory contract for purposes of § 365 and whether Trustee was required to assume the Agreement pursuant to § 365.

Trustee also sought summary judgment on the issue of whether the Agreement remains valid and enforceable with regard to the bankruptcy estate's interest in the Partnership. To the extent the Court's holding that the Agreement is not executory affects the validity of the Agreement, vis-à-vis the requirement to assume or reject, the Court concludes, as a matter of law, that the Agreement remains valid and enforceable as regards the bankruptcy estate's interest in the Partnership. As to any other reason the Agreement may not be valid or enforceable as to the estate's interest, such would be a separate issue which is not presently before the Court.

A separate order will be entered. The order will also set a date for a status conference, at which time Partnership's motion for a protective order will also be heard.

DATED: February 24, 2023

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION–20